## Case No. 113.

### AIKEN v. MANCHESTER PRINT WORKS.

[2 Cliff. 435.][1]

Circuit Court, D. New Hampshire. May Term, 1865.

PATENTS FOR INVENTIONS — ASSIGNMENT AND LICENSE—RIGHT OF PURCHASER TO USE PATENTED MACHINE—REPAIRS.

1. Where a person has purchased of the owner of the invention certain knitting-machines, with which the vendor was accustomed to send a package of the needles used in the same, it was *held*, that the sale of the machines did not carry with it a right to the purchaser to manufacture new needles of the same construction as those sold him, when those which he had bought were worn out, although the machines could not be operated without them, and the needles were the patented invention of the seller: the needles, however, being the subject-matter of a different patent from that covering the machines.

[Cited in Singer Manuf'g Co. v. Springfield Foundry Co., 34 Fed. Rep. 395.]

2. The grant of a machine, with the right to use it, does not import the same privileges under the patent as the sale of the right to make and vend the patented machine.

[Cited in Adams v. Burks, Case No. 50; Singer Manuf'g Co. v. Springfield Foundry Co., 34 Fed. Rep. 395.]

3. In the latter case the purchaser buys a portion of the franchise, and the right he acquires necessarily terminates at the time limited for the continuance of the patent; but in the former, the machine sold passes outside of the monopoly, and is no longer under the protection of the patent act.

[Cited in Adams v. Burks, Case No. 50.]

4. Redress for injury in such case must be sought in the state courts, under state laws, and not under the special jurisdiction conferred on the federal courts by the patent act.

5. In this case the purchasers could repair the machines and the needles, or improve them (if in so doing they infringed no patented right,) because both needles and machines had paid the royalty to the patent, and were outside the limits of the monopoly, and the property of the purchaser; but the purchase of these particular machines and devices conferred no power to

[1][Reported by William Henry Clifford, Esq., and here reprinted by permission.]

manufacture new ones to take their places when once worn out or destroyed.

[Cited in Young v. Foerster, 37 Fed. Rep. 204.]

[See note at end of case.] .

[At law. Action by Walter Aiken against the Manchester Print Works for infringement of patent No. 6,025. Judgment for plaintiff.]

Trespass on the case for the alleged infringement of a patent on knitting-machine needles. The action was in the name of the assignee of the patent. The inventor was James Hibbert; and the original patent was issued to him on the 9th of January, 1849. Subsequently the inventor deceased, and the patent on the 9th of December, 1862, was reissued to his administrator, and extended for a further term of seven years. The administrator assigned the patent, and the first assignee assigned to the plaintiff, who was the legal owner of the entire interest. Plea was the general issue with notice of special matter, that the original patentee was not the first and original inventor of the improvement; but the actual defence set up at the trial was that of license from the plaintiff. The extended patent was introduced by the plaintiff, and he also offered evidence to show that the defendants had made and used the patented device, as alleged in the declaration. The invention was stated in the specification to consist of a latch or tongue in connection with the hook of the needle, sweeping freely back and forth upon a center pin; and it was not controverted that the invention was well described. The claim of the patent was for the application of a latch or tongue to the hook of the needle, and operated as therein described; and the claim was, in the view of the court, in exact accordance with the description in the specification. The defendants offered to prove that they purchased certain knitting-machines of the plaintiff, with the right of using the same, and that the needles made and used by them were used in such machines as they had purchased of the plaintiff, or which he had manufactured for his brother, who had sold the machines to the defendants with the knowledge and consent of the plaintiff. The parties conceded that the knitting-machines were also the subject of certain other patents, and that the plaintiff was in whole or in part the legal owner of such patents. The evidence showed that the several knitting-machines purchased by the defendants contained a full set of needles, and that the purchase and sale embraced a surplus number of the same tied up in a small bundle attached to each machine, and which were delivered with the machines as part of the purchase and sale. New needles, it appeared, would last about four weeks, and the machines could not be operated as knitting-machines, without the needles. The defence was, that the sale of the machines by the plaintiff to the defendants gave them the right, when the needles which were made part of the purchase were worn out, to manufacture others and to replace those worn out, and to use the same for the purposes for which the machine was originally constructed. But the court instructed the jury that the sale by the plaintiff, and the purchase by the defendants, of the knitting-machines and the needles in and accompanying the same, did not confer upon the defendants any right, after the needles were worn out, or had become useless, to manufacture other needles, as patented to the plaintiff, and use the same in the machines so sold and purchased. Under the ruling of the court, a verdict was rendered for the plaintiff, subject to the opinion of the court upon the question of law reserved, with power in the court to render judgment on the verdict, or to set the same aside and to enter judgment for the defendants; but reserving the right to either party to turn the case into a bill of exceptions.

Causten Browne and Daniel Barnard, for plaintiff.

S. N. Bell and D. Clark, for defendants.

CLIFFORD, Circuit Justice. The proposition of the defendants is, that the sale of the machines implies the right to use the same, and that, when the needles were worn out, so that the machine could not be operated, it carries with it the right to manufacture new ones as the necessary means to enable them to enjoy the right of use implied by the purchase. Take the question as stated, and it is certainly one of importance, and one which deserves to be carefully considered. Analogous questions, however, have several times been presented to the supreme court, and the views of the court, as expressed in those cases, will aid very much in reaching a right conclusion as to the rights of the parties in this controversy. An intelligent discussion of the question requires that the distinction between the grant of the right to make and vend the patented machine, and the grant of the machine with the right to use it, should be kept constantly in view. Such a question first came before the court in the case of Wilson v. Rousseau, 4 How. [45 U. S.] 646, where it was much considered, and it was generally conceded that the true distinction was there maintained, but it must be admitted that there are some expressions in the opinion of the court not quite satisfactory. Subsequently the same question was again presented to the same court in the case of Bloomer v. McQuewan, 14 How. [55 U. S.] 549, which places the question upon its true foundation. Patentees acquire the right under a patent to exclude every one from making, using, or vending the thing patented without their permission, and they acquire nothing more. When the patentee sells the exclusive privilege of

making, using, or vending it for use in a particular place, the purchaser buys a portion of the franchise; but the interest he acquires necessarily terminates at the time limited for the continuance of the patent, unless it be otherwise specially stipulated in the contract. But the purchaser of the implement or machine, for the purpose of using it in the ordinary pursuits of life, stands on different grounds. When the patented machine rightfully passes from the patentee to the purchaser or from any other person by him authorized to convey it, the machine is then no longer within the limits of the monopoly. Then the machine so sold passes outside of the monopoly, and is no longer under the protection of the patent act. Redress, in such cases, in case of injury, must be sought in the courts of the state, according to the laws of the state, and not in the federal courts, under the special jurisdiction conferred for the protection of patent rights. Repeated decisions of the supreme court have laid down this doctrine, until it cannot any longer be regarded as an open question. Chaffee v. Boston Belting Co., 22 How. [63 U. S.] 217; Bloomer v. Millinger, 1 Wall. [68 U. S.] 351. Able counsel, in the case last named. desired the court to qualify the previous decisions upon this subject; but the unanimous opinion of the judges was opposed to the suggestion, and held that such a purchaser may continue to use the machine until it is worn out, or he may repair it or improve upon it, as he pleases, in the same manner as if dealing with property of any other kind. [Crane v. Price,] Webst. Pat. Cas. 413, note p. Great care must, however, be observed in applying that rule to the present case. Undoubtedly both the machines and the needles purchased by the defendants fall within the rule. The defendants may repair them or improve upon them as they please, so that they do not infringe any patent right, because the machines and the needles, having paid the royalty imposed under the patent act, are no longer within the limits of the monopoly. These articles have become private, individual property, not protected by the laws of the United States, but by the laws of the state in which the property is situated. The indubitable right of the defendants is to repair or improve the articles as long as they will last, but they cannot make new ones, nor can they, in the exercise of their right to repair the old ones, infringe another man's patent. Right to repair is limited by the same rules that operate in the repair of other property. The owner may repair, but he cannot appropriate the materials belonging to another man, in effecting the purpose. Purchasers in this case may repair the needles they purchased, but they cannot manufacture new ones, without license. Reference is made to the case of Wilson v. Simpson, 9 How. [50 U. S.] 123; but a careful examination of the case will show that it affirms the very rule here maintained. When we speak of the right to restore a part of a deficient combination, we mean, say the court, the part of one entirely original, and not of any other patented thing, which has been introduced into it to aid its intended performance. The cutters and knives, in that case, were not subject to a patent, and of course the respondent had a right to use them as materials to repair his machine; but unfortunately for the defendants in this case, the needle is subject to a patent, and in making and using it they have infringed the right of the plaintiff. '

In view of the whole case, we are clearly of the opinion that there must be judgment on the verdict.

[NOTE. "Patented implements or machines sold to be used in the ordinary pursuits of life become the private individual property of the purchasers, and are no longer specifically protected by the patent laws of the state where the implements or machines are owned or used. Sales of this kind may be made by the patentee with or without conditions, as in other cases; but where the sale is absolute, and without any conditions, the rule is well settled that the purchaser may continue to use the implement or machine purchased until it is worn out, or he may repair it, or improve it as he pleases, in same manner as if dealing with property of any other kind." Mr. Justice Clifford, in Mitchell v. Hawley, 16 Wall. (83 U. S.) 544. See, also, Adams v. Burke, Case No. 49, note, and same case on appeal in 17 Wall. (84 U. S.) 453; Nixon v. Paper-Bag Mach. Co.. 105 U. S. 771; Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. Rep. 244.]

[Patent No. 6,025 was granted to J. Hibbert, January 9, 1849, and was judicially construed in Aiken v. Dolan, Case No. 110.]