THOMSON–HOUSTON ELECTRIC CO. v. KELSEY ELECTRIC RAILWAY SPECIALTY CO.

SAME v. BILLINGS & SPENCER CO.

(Circuit Court, D. Connecticut. March 2, 1896.)

Nos. 868 and 869.

1. PATENTS—CONTRIBUTORY INFRINGEMENT.
   Contributory infringement is the intentional aiding of one person by another in the unlawful making or selling or using of the patented invention.

2. SAME.
   It is contributory infringement to make and sell a substantial and durable element of a patented combination, not merely for purposes of repair, but with knowledge that the same will be used by others so as to infringe the patent.

These were two bills in equity brought by the Thomson-Houston Electric Company against the Kelsey Electric Railway Specialty Company and the Billings & Spencer Company, respectively, for alleged infringement of a patent. The case was heard upon complainant's motion for a preliminary injunction.

Frederick H. Betts, for complainant.

Charles R. Ingersoll and E. H. Rogers, for defendants.

TOWNSEND, District Judge. This hearing was had upon a motion for a preliminary injunction restraining defendants from infringing certain claims of patent No. 495,443, granted April 11, 1893, to the Thomson-Houston Electric Company, assignees of the administrators of Charles J. Van Depoele, the validity of which have been sustained in this court, upon final hearing, in Thomson-Houston Electric Co. v. Winchester Ave. R. Co., 71 Fed. 192. The affidavits show that the defendants, respectively, make and sell certain trolley stands, adapted to be used with the pole and wheel of the overhead, underrunning, trolley system; that they have advertised the same for sale to the general public, and have sold them to jobbers in the open market. In some instances, defendants have sold said stands to repair or replace other stands purchased from the General Electric Company, which is alleged to control this complainant; and in the case of the Norwalk Street-Railway Company, equipped by said General Electric Company and this complainant, defendants sold their trolley stands, by reason of certain advantages in their construction, to replace those of the General Electric Company. It further appears that defendants have

used a trolley pole, in connection with their stands, in their show room; and that they sold to one Hammer, representing himself to be an electrical contractor, one of said stands, equipped with a pole, harp, and wheels, which they had theretofore used in their experiments in their shop. The following facts, also shown, have a bearing upon the questions to be hereafter discussed: The entrance of defendants into the field as dealers in this class of electrical apparatus is recent, and with notice of the claims of said patent. Said trolley stands are adapted only for electric railways, and can only be used to effectuate the construction covered by the patent in suit. The advertisements thereof contained no limitation to sales for repairs, or to persons having the right to use said invention, and it may fairly be inferred from the affidavits that sales have been made to persons not having such right. The trolley stand is probably the most substantial, if not the chief, element in the patented combination. It does not appear that it wears out quickly, or breaks frequently, as do poles, wheels, and harps,—other elements in said combination.

The bill charges defendants with actual infringement and threats to infringe. Such infringement, if any, is contributory only, inasmuch as defendants only deal in a part of the patented combination. Contributory infringement has been well defined as "the intentional aiding of one person by another in the unlawful making or selling or using of the patented invention." Howson, Contrib. Infringe. Pat. p. 1. Counsel for defendants rightly claim that the burden of proof is on complainant to show an intention on the part of defendants to aid others in such infringement. Coolidge v. McCone, 1 Ban. & A. 78, Fed. Cas. No. 3,186; Saxe v. Hammond, 1 Ban. & A. 629, Fed. Cas. No. 12,411; Snyder v. Bunnell, 29 Fed. 47. The question, however, as to what evidence is sufficient to prove such intention, has been considered in several cases where the facts were somewhat similar to those herein presented. Thus, in Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100, the court said:

"The complainants having a patent for an improved burner in combination with a chimney, the defendants have manufactured extensively the burner; leaving the purchasers to supply the chimney, without which such burner is useless. They have done this for the express purpose of assisting, and making profit by assisting, in a gross infringement of the complainants' patent. They have exhibited their burner furnished with a chimney, using it in their sales rooms to recommend it to customers and prove its superiority, and therefore as a means of inducing the unlawful use of the complainants' invention."

In Richardson v. Noyes, 2 Ban. & A. 398, Fed. Cas. No. 11,792, it is said that the defendants

"Make only the standards for children's carriages; but it is admitted that they are made and sold to the carriage builders for the express use to which they are put,—that is, for children's carriages,—and it is not denied that this makes them, in law, infringers, if their standards, when combined with the carriages in the mode in which they are designed to be combined, infringe the patent."

To the same effect is Renwick v. Pond, 10 Blatchf. 39, Fed. Cas. No. 11,702, where Judge Blatchford held that the defendant would

be an infringer if he sold an arm capable of being, and designed to be, used to effect the result of the patent by the means specified in its claims. It seems to me that this case falls within the rule as stated by Judge Wallace in Travers v. Beyer, 26 Fed. 450, where the court said:

"Defendants cannot escape liability for infringement. They are making, and putting upon the market, an article which, of necessity, to their knowledge, is to be used for the purpose of infringing the complainant's patent. They thereby concert with those to whom they sell the blocks to invade the complainant's rights. They are intentional promoters of the ultimate act of infringement."

In this latter case the defendants were manufacturers of blocks, and not makers of the hammocks, and merely sold the blocks to dealers in hammocks, who resold the blocks with or without the hammocks, at the option of the purchasers.

Defendants further contend that the right to replace these stands was a part of the invention transferred to the purchaser when he bought the equipment. This argument might be applied to the wheels, the life of which continues only about four weeks, because, as was said by Mr. Justice Brown in Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627:

"The right of the assignee to replace the cutter knives is not because they are perishable materials, but because the inventor of the machine has so arranged them, as a part of his combination, that the machine could not be continued in use without a succession of knives at short intervals. Unless they were replaced, the invention would have been of little use to the inventor or to others."

But, for reasons already shown, it would not apply to said trolley stands.

Defendants further suggest that their trolley stand is capable of a lawful as well as an unlawful use, by way of reparation or restoration of a patented device, and that the presumption must be that this is the purpose for which it is to be used. As already shown, it does not appear, by advertisements or sales, that its use is to be confined to such purpose. Inasmuch as the defendants make and thus sell stands which are useful only for the purpose of performing functions involved in the operation of the patent, it raises a presumption that they intend their stands should be so used. A suit for infringement cannot be defeated by merely showing that such devices could be used for some other purposes. Walk. Pat. (3d Ed.) 331.

In view of these considerations, it seems to me that the complainant has sustained the burden of proof, and that, as was said by Judge Woodruff in Wallace v. Holmes, supra, "the actual concert with others is a certain inference from the nature of the case."

It is further claimed that to enjoin the sale of a single element only of the combination would give the patent a scope not covered by its claims. But, as was said by Judge Putnam in Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276:

"Nor is the course of the law to be turned aside because the practical result may be to give a patentee, for the time being, more than the patent office contemplated; nor is the patentee to be deprived of his just rights because, under some circumstances, he gets incidental advantages beyond what he expressly bargained for."

Counsel for defendants laid much stress upon the sale to said Norwalk Street-Railway Company of an improvement upon the original trolley stands, as lawful, within the reasoning of the court in Chaffee v. Boston Belting Co., 22 How. 217, and other cases. In this regard, however, defendants do not seem to have met the contention of complainant that such a sale, under such circumstances, amounts to reconstruction, and not repair. Davis Electrical Works v. Edison Electric Light Co., supra; St. Louis Car-Coupler Co. v. Shickle, Harrison & Howard Iron Co., 70 Fed. 783. Here there is no such temporary relation between the trolley-stand element and the whole combination as to raise a presumption that it was the intention of the inventor that it should be frequently replaced, as in Wilson v. Simpson, 9 How. 109, and Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., supra. The case is clearly analogous to that of St. Louis Car-Coupler Co. v. Shickle, Harrison & Howard Iron Co., supra. There defendants claimed the right to replace a knuckle,—a single substantial element of a patented combination. The court said:

"This knuckle is not an ordinary tool or piece of mechanism, which can be procured at any general hardware store, but is unique, and can be used only in connection with the balance of complainants device. There can be no doubt, therefore, that the defendant intended to manufacture and sell the knuckle to be used in, and as forming an important and essential part of, the complainant's patented device. If the defendant can do this with impunity, it, or any other person, can certainly manufacture and sell the other less important parts, and thereby the value of complainant's monopoly will be limited to the first sales made by it. This cannot be the law."

The motion is granted.