GOODYEAR SHOE MACHINERY CO. v. JACKSON et al.

(Circuit Court of Appeals, First Circuit. December 6, 1901.)

No. 392.

1. PATENTS—CONTRIBUTORY INFRINGEMENT.

The essence of contributory infringement of a patent lies in concerting or planning with others in an unlawful invasion of the patentee's rights, which is usually done by making or selling a part of the patented invention with the intent and purpose of aiding another in its sale or use. Contributory infringement cannot be predicated of the rebuilding or replacing of parts of a patented machine by a purchaser for his own use.[1]

2. SAME—INFRINGEMENT BY PURCHASER.

The purchaser of a patented machine, in order to infringe, must make or reproduce in substance the whole patented invention. The only difference between his position and that of an ordinary infringer is that he has bought a patented machine, and consequently his infringement does not consist in the construction of a wholly new machine, but in the reconstruction of his machine after it is worn out, or substantially destroyed; and, to constitute infringement on his part, where the patented invention comprises several elements in combination, it is only

---

[1] Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

necessary that he shall have reconstructed all the material or essential elements of the combination.

3. SAME.

No general rule can be laid down by which to determine the line of demarcation between legitimate repairs which a purchaser of a patented machine may rightfully make thereon and a reconstruction or reproduction which will constitute infringement. Each case must, in that regard, be decided on its own facts, having reference to the scope and purpose of the invention and the fair and reasonable intention of the parties.

4. SAME—SEWING MACHINES—RECONSTRUCTION OF PARTS OF COMBINATION.

The Fowler & Warren patents, No. 545,625, No. 560,705, and No. 564,-986, each of which covers a combination of mechanism for sewing machines, embracing a number of essential elements, *held* not infringed by purchasers who had one or more of such elements reconstructed when worn out or broken. There having been in each case remaining elements or parts which were essential to the patented combination, the replacement of those worn out or broken constituted repair, and not a rebuilding.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Benjamin Phillips (Elmer P. Howe, on the brief), for appellant.
Vere Goldthwaite, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

COLT, Circuit Judge. There is presented on this appeal the single question of legitimate or illegitimate repair by the purchasers of a patented machine. The defendants, in rather a small way, were engaged in the business of general jobbing and repair work, and several purchasers sent their machines to the defendants' shop for repairs. In repairing the machines, the defendants made and replaced a number of parts, and the contention is that these repairs constituted an infringement of three of the complainant's patents for attachments to these machines.

It is admitted by counsel that the case stands the same as if the suit had been brought directly against the purchasers. This limits the issue strictly to the right of the purchasers to make these repairs, and eliminates any question of possible contributory infringement by the defendants by reason of making and selling parts of these machines.

But, although the case stands the same as if suit had been brought directly against the purchasers, the complainant's brief and argument have proceeded largely upon the assumption that infringement by the purchaser of a patented machine is closely allied to contributory infringement, in that both kinds of infringement relate to making a part of a patented invention, as distinguished from making the whole; and this has led the complainant to base infringement mainly upon the circumstance that the purchasers, in repairing their machines, replaced one of the material elements of the patented combinations. The fact is, however, that the two kinds of infringement are fundamentally different.

Infringement is the unlawful making or selling or using of a patented invention. Contributory infringement is "the intentional aiding of one person by another in the unlawful making or selling or using of the patented invention"; and this is usually done by making or selling a part of the patented invention with the intent and purpose of so aiding. The essence of contributory infringement lies in concerting or planning with others in an unlawful invasion of the patentee's rights. Howson, Contrib. Infringe. Pat. 1; Thomson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co. (C. C.) 72 Fed. 1016; Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C.) 78 Fed. 139; Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100; Renwick v. Pond, 10 Blatchf. 39, Fed. Cas. No. 11,702; Saxe v. Hammond, 1 Ban. & A. 629, Fed. Cas. No. 12,411; Richardson v. Noyes, 2 Ban. & A. 398, Fed. Cas. No. 11,792; Schneider v. Pountney (C. C.) 21 Fed. 399; Travers v. Beyer (C. C.) 26 Fed. 450, 23 Blatchf. 423; Snyder v. Bunnell (C. C.) 29 Fed. 47; Celluloid Mfg. Co. v. American Zylonite Co. (C. C.) 30 Fed. 437; Singer Mfg. Co. v. Springfield Foundry Co. (C. C.) 34 Fed. 393; Schneider v. Missouri Glass Co. (C. C.) 36 Fed. 582; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, 35 L. R. A. 728.

Infringement by the purchaser of a patented machine consists in the substantial rebuilding of such machine. A contributory infringer necessarily only makes or sells a part of the patented invention. The purchaser of a patented machine, in order to infringe, must make or reproduce, in substance, the whole patented invention. To prove infringement, in one case, it is only necessary to show a partial infringement in aid of an unlawful complete infringement, while in the other case a substantially full and complete infringement must be established. The rule that a person may be guilty of contributory infringement by making or selling a material element of the patented combination has no application to infringement by the purchaser of a machine embodying such patented combination. A purchaser stands in no different position from an ordinary infringer, except in the circumstance that he has bought a patented machine, and, consequently, his infringement does not consist in the construction of a wholly new machine, but in the reconstruction of such machine after it is worn out or substantially destroyed. The essense of the infringement is the same in both cases.

The ordinary infringer makes the entire patented machine; the infringing purchaser begins with what remains of the patented machine, and rebuilds it. To show infringement in the case of an ordinary infringer, where the patented invention comprises several elements in combination, it is necessary to prove that the alleged infringing machine contains all the elements (or their equivalents) which make up the combination, although some of the elements may not be material, or of the essence of the invention. To show infringement by the purchaser in such a case, the same strictness of proof is not required, for the reason that it may not be necessary for him to make the immaterial or unessential elements of the patented combination, because they may not be worn out or destroyed in his

machine when the work of reconstruction begins. A practical reconstruction of the patented machine, and not necessarily a literal reconstruction of the patented combination, is all that is required to constitute infringement by the purchaser. For example, where the patent is for an improved lamp, and the whole invention resides in the burner, but the claim is for the combination of the burner and a chimney, in an ordinary suit for infringement it must be shown that the defendant made or used or sold the patented combination, namely, the burner and chimney; while in a suit for infringement against a purchaser of the lamp it would only be necessary to prove that he replaced the old burner with a new one, because, manifestly, that would constitute a substantial reconstruction of the patented invention. If a person other than the purchaser should make or sell the burner with the intent and purpose of its use by another in combination with the chimney, it would be a clear case of contributory infringement. Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100.

In approaching the question of infringement by the purchaser of a patented machine, it is important to bear in mind what the patentee sold and the purchaser bought. The patentee has parted with his machine and the monopoly that goes with it, and the purchaser has bought the machine with the right to use the patented invention until the machine is worn out or destroyed. When the machine is worn out, or substantially destroyed, his right to use the patented invention ceases; and when he rebuilds his machine, and thereby makes substantially a new machine, it becomes subject to the patentee's monopoly, the same as in the case of any other person who unlawfully makes the patented machine. When the patented machine has passed outside the monopoly by a sale and purchase, the patentee has no right to impose any restrictions on its use for his own benefit. He cannot forbid the further use of the machine because it is out of repair in consequence of the wearing out or breaking of some of its parts, and so oblige the purchaser to buy a new machine. The purchased machine has become the individual property of the purchaser, and is like any other piece of property which he owns. He may sell it, or he may use it so long as its usefulness lasts, and then throw it away, or dispose of it for junk. He may prolong its life and usefulness by repairs more or less extensive, so long as its original identity is not lost. He is only prohibited from constructing a substantially new machine. He cannot, under the pretext of repairs, build another machine. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; Adams v. Burks, 17 Wall. 453, 21 L. Ed. 700; Chaffee v. Belting Co., 22 How. 217, 223, 16 L. Ed. 240; Mitchell v. Hawley, 16 Wall. 544, 546, 547, 21 L. Ed. 322; Hobbie v. Jennison, 149 U. S. 355, 363, 13 Sup. Ct. 879, 37 L. Ed. 766; Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52, 27 L. Ed. 79; Aiken v. Print Works, 2 Cliff. 435, Fed. Cas. No. 113; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 435, 14 Sup. Ct. 627, 38 L. Ed. 500; Gottfried v. Brewing Co., 5 Ban. & A. 5, Fed. Cas. No. 5,633; Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276; Id. (C. C.) 58 Fed. 878.

A purchaser, then, may repair, but not reconstruct or reproduce, the patented device or machine. Repair is "restoration to a sound, good, or complete state after decay, injury, dilapidation, or partial destruction." Reconstruction is "the act of constructing again." Reproduction is "repetition," or "the act of reproducing." These definitions are instructive in bringing home to the mind that repair carries with it the idea of restoration after decay, injury, or partial destruction, and that reconstruction or reproduction carries with it the idea of a complete construction or production over again.

But the difficult question still remains, what is legitimate repair, and what is reconstruction or reproduction as applied to a particular patented device or machine? When does repair destroy the identity of such device or machine and encroach upon invention? At what point does the legitimate repair of such device or machine end, and illegitimate reconstruction begin?

It is impracticable, as well as unwise, to attempt to lay down any rule on this subject, owing to the number and infinite variety of patented inventions. Each case, as it arises, must be decided in the light of all the facts and circumstances presented, and with an intelligent comprehension of the scope, nature, and purpose of the patented invention, and the fair and reasonable intention of the parties. Having clearly in mind the specification and claims of the patent, together with the condition of decay or destruction of the patented device or machine, the question whether its restoration to a sound state was legitimate repair, or a substantial reconstruction or reproduction of the patented invention, should be determined less by definitions or technical rules than by the exercise of sound common sense and an intelligent judgment.

When the patent is for a single thing, like a knitting needle, for example, and not for a device or machine composed of several things or elements combined, it is obvious that the replacement of an old needle by a new one in a knitting machine is not repair, but a reproduction of the patented thing. Aiken v. Manchester Print Works, 2 Cliff. 435, Fed. Cas. No. 113; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 435, 14 Sup. Ct. 627, 38 L. Ed. 500; Wilson v. Simpson, 9 How. 109, 124, 13 L. Ed. 66.

When the patent is for a device embracing the combination of several elements, a purchaser will infringe by reconstructing the device after it has fulfilled its purpose and is substantially destroyed. Where, for instance, the patent was for a cotton-bale tie, consisting of a band and buckle, and "licensed to use once only," it is manifest that the severance of the band at the cotton mill was intended to operate as a destruction of the tie, and that to roll and straighten the pieces of the band and rivet the ends together, at the same time using the old buckle, was a reconstruction of the tie, and not repair. Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52, 27 L. Ed. 79.

Again, where the subject of the patent was an electric lamp, and the invention resided in the discovery that an attenuated carbon filament, if operated in a high vacuum, would withstand disintegration, and the claim was for the combination of carbon filaments with a receiver made entirely of glass, and conductors passing through

the glass, from which receiver the air is exhausted, it is plain that, when the filament is destroyed, and the vacuum is destroyed by making a hole in the receiver, and nothing remains but a perforated glass bulb and the conductors, the lamp is practically destroyed, and that to replace the old filament with a new one, and again exhaust the air in the receiver, and again seal it, is substantially the making of a new lamp. Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276; Id. (C. C.) 58 Fed. 878.

Where the patent is for a machine, which commonly embraces the combination of many constituent elements, the question of infringement by the purchaser will turn upon whether the machine is only partially worn out or partially destroyed, or is entirely worn out, and so beyond repair in a practical sense. In the case of a patent for a planing machine composed of many parts it was held that the replacement of the rotary knives, "the effective ultimate tool" of the machine, was repair, and not reconstruction. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66. In that case the supreme court rested its decision on two grounds: (1) The right of the owner to replace a material part of the patented combination; and (2) the right to replace a part of the machine which it was known would quickly wear out, such replacement being necessary to a continued use of the machine, and therefore contemplated by the patentee when the machine was sold. The decision in that case contains a careful discussion of the rights of a purchaser of a patented machine, and of the fundamental grounds on which those rights are based, and of the difference between repair and reconstruction:

"When the material of the combination ceases to exist, in whatever way that may occur, the right to renew it depends upon the right to make the invention. If the right to make does not exist, there is no right to rebuild the combination. But it does not follow, when one of the elements of the combination has become so much worn as to be inoperative, or has been broken, that the machine no longer exists for restoration to its original use by the owner who has bought its use. When the wearing or injury is partial, then repair is restoration, and not reconstruction. * * * Repairing partial injuries, whether they occur from accident or from wear and tear, is only refitting a machine for use; and it is no more than that though it shall be a replacement of an essential part of a combination. It is the use of the whole of that which a purchaser buys when the patentee sells to him a machine; and when he repairs the damages which may be done to it it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole. * * * And what harm is done to the patentee in the use of his right of invention, when the repair and replacement of a partial injury are confined to the machine which the purchaser has bought?

"Nothing is gained against our conclusion by its being said that the combination is the thing patented, and that, when its intended result cannot be produced from the deficiency of a part of it, the invention in the particular machine is extinct. It is not so. Consisting of parts, its action is only suspended by the want of one of them, and its restoration reproduces the same result only, without the machine having been made anew."

The opinion then proceeds to discuss specifically the patented machine in controversy:

"It does not permit an assignee of the first term of a patent, after its renewal and extension, to make other machines, or to reconstruct it, in

gross, upon the frames of machines which the assignee had in use when the renewal and extension of the patent took effect. But it does comprehend and permit the resupply of the effective ultimate tool of the invention, which is liable to be often worn out, or to become inoperative for its intended effect, which the inventor contemplated would have to be frequently replaced anew, during the time that the machine, as a whole, might last. * * * The right of the assignee to replace the cutter knives is not because they are of perishable materials, but because the inventor of the machine has so arranged them as a part of its combination that the machine could not be continued in use without a succession of knives at short intervals. Unless they were replaced, the invention would have been but of little use to the inventor or to others. The other constituent parts of this invention, though liable to be worn out, are not made with reference to any use of them which will require them to be replaced. These, without having a definite duration, are contemplated by the inventor to last so long as the materials of which they are formed can hold together in use in such a combination. No replacement of them at intermediate intervals is meant or is necessary. They may be repaired as the use may require. With such intentions they are put into the structure. So it is understood by a purchaser, and beyond the duration of them a purchaser of the machine has not a longer use. But if another constituent part of the combination is meant to be only temporary in the use of the whole, and to be frequently replaced, because it will not last as long as the other parts of the combination, its inventor cannot complain, if he sells the use of his machine, that the purchaser uses it in the way the inventor meant it to be used, and in the only way in which the machine can be used. Such a replacement of temporary parts does not alter the identity of the machine, but preserves it, though there may not be in it every part of its original material."

Each of the purchasers in the suit at bar bought from the Lincoln Sewing Machine Company, who then owned the patents in issue, machines called the "Lincoln Machine," an in-seam sewing machine designed to unite the sole and upper of a turned shoe, or the sole and welt of a welt shoe. There are always found in such a machine a needle, a looper, and a tension for forming the stitch, and their actuating mechanism; guiding devices for guiding the work, and their actuating mechanism; and feeding devices for feeding the work, and their actuating mechanism. The hooked needle pierces the work with a forward and upward movement, and a double line of thread is left outside of the upper or welt, and a single line in the channel. The needle is first forced through the work; the thread is then led into the throat of the needle hook by the looper, and the needle is drawn back through the hole, pulling the loop of thread. The work is then moved along the length of one stitch, and the needle is again thrust through the work, again threaded, and again drawn back, pulling a second loop of thread through the work and through the first loop; and this process is repeated for each stitch. The thread is drawn from the spool, and extends from the spool to the work through the machine. In these machines the needle holes are approximately parallel to the surface of the sole, and the feeding instrument was either the needle itself or a puncturing instrument which made the holes substantially coincident with the holes made by the needle. This kind of feed was found objectionable in sewing around the pointed or sharply-curved toe of a shoe. This objection was overcome by a feeding instrument which penetrated the work substantially at right angles to the hole made by the needle.

The first Fowler & Warren patent in issue—No. 545,625, dated

September 3, 1895—covers this improved feed. The specification, after reciting the defects in the old machines, says:

"The object of our invention is to adapt this class of machines to work where the direction of the seam changes abruptly; and our invention consists in the combination with the needle of a feeding instrument which penetrates the work substantially at right angles to hole made by the needle. * * * The feeding instrument has the usual four motions, but its penetrating and withdrawing motions are at right angles to the needle holes, instead of being parallel or in line with the needle holes, as heretofore."

At the end of the specification the patentees set forth their invention as follows:

"What we claim as our invention is: In a sewing machine, the needle; mechanism for actuating it to cause it to penetrate the between substance; the feeding point; mechanism for actuating it to cause it to move endwise and penetrate the between substance in a path at right angles to the path of the needle; and mechanism to move the feed point sidewise after it has penetrated and while it is in the between substance, for feeding the work leaving the shoe free to be turned upon the feeding point as an axis during the feeding operation,—all combined, and operating substantially as and for the purpose specified."

It will be observed that the patentees do not claim their particular kind of feed for penetrating the work at right angles as their invention, but this feed in combination with the needle and mechanism for actuating it, and mechanism to move the feed point sidewise after it has penetrated and while it is in the work.

When the purchaser bought a Lincoln machine, he bought a machine which embodied all the elements in the patented combination, with the right to use that combination as a whole until it was worn out. He had the right to repair partial injuries to the combination arising from wear and tear, and so refit the machine for use, though it involved the replacement of an essential part of the combination. To prove that the purchaser of a Lincoln machine infringed this patent, it must be shown that the repairs on his machine involved a substantial reconstruction or reproduction of the patented combination which was sold to him, and which became his absolute property.

The complainant rests its charge of infringement upon the fact that the purchaser, in repairing his machine, replaced, in the feeding device, the cam which, with its connections, gives the vertical movement to the needle. The remaining repairs, so far as they relate to this patent, are admitted to have been immaterial. It is manifest, however, that a broken or wornout cam effected only a partial destruction of the patented combination composed of three separate groups of mechanism, and that the replacement of the old cam with a new one was not a substantial rebuilding of the combination. If the patented invention had been for this particular form of cam, or had been simply for an improved feed, and the whole invention had resided substantially in the cam, the case would have presented a different aspect.

The second Fowler & Warren patent in suit is No. 560,705, dated May 26, 1896, and it is stated to be for "a new and useful welt guide mechanism for sewing machines." The improvement is for a welt guide which moves in the curved path of the needle, in place of the old welt guide, which only moved to and from the work in a

straight line; so that, when the welt guide was a little too far in or a little too far out, the point of intersection was not in the bottom of the groove in the welt held in the welt guide, but a little to one side.

The invention claimed is as follows:

"What we claim as our invention is: In a curved needle sewing machine a welt guide; its holder; a carrier for the welt guide holder; and means for moving the holder with relation to its carrier and for moving the carrier toward and from the curved needle, to cause a point in the welt guide to move in the arc in which the curved needle moves,—all combined and operating substantially as described."

Here again we have a combination patent embracing a number of essential elements. The purchaser of a Lincoln machine bought the whole of this combined mechanism, and was entitled to use it until its usefulness had ceased by reason of decay or destruction. The charge of infringement of this claim is substantially limited to the replacement of the cam which moves the carrier to and from the curved needle. But this cam is only one of the material elements of the patented combination; and, further, it only moves the carrier back and forth in a straight line, and is not productive of the curved movement of the welt guide, which is the essential feature of this invention. As for the carrier of the welt guide, which it is also said the purchaser replaced, this again is only one of the elements of the combination. On the whole, we fail to find in these repairs anything like a substantial rebuilding of the patented combination.

The remaining Fowler & Warren patent in issue is No. 564,986, granted August 4, 1896. This patent is for a new and useful improvement "in means for providing slack thread" in this class of sewing machines. It relates to what is known as a "pull off." In these machines the thread is held under tension, and the needle was obliged to pull off the thread against such tension. The pull off is a device to relieve the needle of this work. Pull offs were known at the date of this invention, as appears by the specification of the patent, which refers to several prior devices of this kind. This invention resided in the simplicity of the construction of the pull off mechanism, and it consisted in so timing the operation of the machine that the pull off operated when the needle held the thread under strain at the completion of its backward stroke. The specification says:

"Our present invention is an improved machine for doing this, its main novelty being that the pull off mechanism does its work after the needle has completed its loop drawing stroke, and while the needle holds a loop of thread in its hook under the strain requisite to set the stitch, instead of relying upon a thread brake to hold the thread against the action of the pull off truck."

The patentees state their invention as follows:

"What we claim as our invention is: In a chain stitch, hook needle sewing machine the combination of tension, looper, hook needle, a pull off mechanism between the needle and the tension, and actuating mechanism timed to cause the pull off mechanism to make its pulling stroke after the hook needle has completed its loop drawing stroke, and while the loop is held under strain by the hook of the needle; substantially as described."

There was sold to the purchaser of a Lincoln machine this patented combination, and he had the right to prolong its life and usefulness by any repairs which fell short of a reconstruction of substantially the whole combination. It cannot be said, therefore, that the replacement by the purchaser of the cam or the pull off lever which moves the pull off truck constituted an infringement of the patent, although it may be this cam was the characteristic and most essential element in the combination. The breaking or wearing out of this cam resulted in only a partial destruction of the patented combination, and its replacement by a new cam was plainly a restoration, and not a substantial reconstruction of the combination.

Under the general principles governing the rights of the parties in this class of cases, we are of the opinion that the purchasers of the Lincoln machines, by repairing their machines to the extent disclosed by the evidence, have not infringed any of the patents in suit.

The decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.