COOLIDGE (HUBBARD v.). See Case No. 6,816.

## Case No. 3,186.

### COOLIDGE v. McCONE.

[1 Ban. & A. 78; 2 Sawy. 571; 5 O. G. 458; 1 Am. Law T. Rep. (N. S.) 214.][1]

Circuit Court, D. Nevada. March Term, 1874.

PATENTS—"AMALGAMATING PAN"—CONSTRUCTION —INFRINGEMENT.

1. The claim, in a patent for an amalgamating pan, was, "constructing and placing the shoes and dies upon upper and nether disks obliquely, at about the angle as described, together with the beveled bars B, B, B, etc., substantially as described and for the purposes set forth." The inventor in his specification states, "the nature of my invention consists in the arranging of shoes and dies having grooves or channels cut obliquely from the circumference to the centre or axis. My invention also relates to beveled bars, placed between each die and partially filling the grooves, for the purpose of keeping the ore near the same as they pass each other." * * * "I do not claim broadly the use of shoes and dies for the purpose of reducing amalgamating ores, for these are well known and used." Held, that the claim was for the shoes and dies as described, in combination with the beveled bars.

2. The patent is not infringed by making and vending the shoes and dies without the beveled bars.

[Cited in Fisher v. Craig, Case No. 4,817.]

In equity. The plaintiff [C. C. Coolidge] is assignee of a patent issued to one Belknap, for a combination of certain shoes and dies, and beveled bars, used in amalgamating pans for the amalgamation of silver ores. The defendant [John McCone], a foundryman, is charged with making and selling the invention in violation of plaintiff's rights. It appeared in the testimony that some time in 1866, before the assignment under which plaintiff claims, the patentee, Belknap, brought the patterns of his shoes and dies to defendant's foundry, and procured him to cast shoes and dies from those patterns, which the patentee himself put into the pans of certain mills in the neighborhood, without charge, for the purpose of introducing them. But the defendant made no "beveled bars" to go with the shoes and dies. These could be made of wood as well as of iron, and Belknap himself made the beveled bars for those mills, wherein he had introduced his invention, the defendant casting from the patterns furnished only the shoes and dies. Afterward, between 1867 and the commencement of this suit, and after the assignment of Belknap's patent to plaintiff, the defendant cast and furnished to various millowners shoes and dies of the same kind. Mill-owners would bring to defendant their own patterns in such form as they desired the castings to be made, and the defendant would cast the shoes and dies from the patterns so furnished, and the parties for whom they were cast would take them away, put

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 5 O. G. 458, contains only a partial report.]

them into the pans in their mills themselves, and there use them. They sometimes obtained dies without the shoes, and used them with other kinds of shoes, and sometimes obtained shoes without the dies, and used them with other kinds of dies. The shoes and dies were not necessarily used together, as the Belknap shoe could be. and sometimes was used with other kinds of dies, and the Belknap die with other shoes. Defendant never inquired what use was to be made of the shoes and dies cast by him, but he simply cast and furnished them from patterns brought by his customers. There was no testimony tending to show that he ever cast or furnished any of the "beveled bars," either with or without the shoes and dies. On the contrary, the testimony showed affirmatively that he never did cast or furnish any beveled bars. There was, also, no testimony tending to show that the parties using the shoes and dies cast and furnished by defendant ever procured from other sources, or used in connection with the shoes and dies furnished by him, any of the "beveled bars" mentioned in the plaintiff's patent, or any mechanical substitute therefor, except in those instances where the patentee himself furnished them as aforesaid, in his efforts to introduce his invention. The casting and furnishing of shoes and dies, as before stated, to parties other than Belknap, are the acts complained of as constituting an infringement of plaintiff's rights.

At the close of plaintiff's testimony, counsel for the defendant moved the court to advise the jury to find a verdict for the defendant on the ground that there was no testimony to show that the defendant had manufactured or sold the plaintiff's invention; the invention claimed and patented being, as defendant insisted, a combination of shoes, dies and the "beveled bars;" and as the beveled bars had not been made or sold, or even used in connection with the shoes and dies furnished by defendant, the whole combination had not been made or sold; and that there was no infringement by making and using a part only of the combination.

Williams & Bixler, for plaintiff.
Lewis & Deal and Beatty, for defendant.

Before SAWYER, Circuit Judge, and HILLYER, District Judge.

SAWYER, Circuit Judge. We have examined the specifications annexed to the patent very carefully, and it is very plain to our minds that the patent is for a combination of several elements or parts. The petitioner commences by describing the drawings, and then states as follows:

"The nature of my invention consists in the arranging of shoes and dies, having grooves or channels cut obliquely from the circumference to the centre, terminating in a line of a radius to the centre or axis. My invention. also, relates to beveled bars placed

between each die, and partially filling the grooves, for the purpose of keeping the ore near the same as they pass each other."

Then he describes how the dies are fixed to the disks, and tells us how other dies have been used in a different arrangement; points out how the beveled bars are arranged in connection with the other parts; describes their operation, and concludes with the claim, which is in the following words:

"I do not claim broadly the use of shoes and dies for the purpose of reducing amalgamating ores, for these are well known and used. What I do claim, however, and desire to secure by letters patent, is, constructing and placing the shoes and dies upon upper and nether disks obliquely at about the angle as described, together with the beveled bars B, B, B, etc., substantially as described, and for the purposes set forth."

The claim is for a combination. There is no claim that the dies are new; that the direction of the grooves is new, or that the bars are new; but what he does claim, is the arrangement of these together, "placing the shoes on upper and nether disks about the angle described, together with the beveled bars B, B, B, substantially as described, and for the purposes set forth." These shoes and dies, arranged as described, "together with," that is to say, united with, in conjunction with, in combination with, the beveled bars, substantially as described. Now, it may be that this claim is not made in such a way as to be so advantageous to the patentee as he was entitled to make it. It may be, that he has arranged his dies in connection with the disks in such a way as to be an improvement by itself, and which may entitle him to a patent for that arrangement, unconnected with the beveled bars; and that he might have put in a claim and obtained a patent for such arrangement, independent of the beveled bars. It may be, that, having obtained a patent for such arrangement, he could also have obtained a patent for a further combination of that arrangement in connection with the beveled bars. If that was the object intended to be covered by this patent, the claimant has failed to express it. It is for the arrangement of the dies and shoes together with, that is to say, in combination with the bars, that it patented. The claim to the whole is made as one indivisible claim, as an entirety, and the entire combination must be made and sold or used in order to constitute an infringement. If the patentee failed to get all he desires, or failed to get his patent in such a form that any part could not be used without an infringement, he has only done what, perhaps, a majority of the patentees before him, in the first instance, have done. It may be necessary to surrender the patent and procure a reissue, in order to secure the full benefit of his invention. However this may be, he has made his claim in his own way, and the patent on that claim is for this

one single indivisible combination of all the elements as an entirety, in manner substantially as described, and for the purpose indicated, that is to say, to cut the pulp, like shears, and throw it up to the cutters by means of the bars.

The charge in this complaint is, that the defendant has made and sold this invention as one single invention. The testimony shows that the defendant has manufactured, and furnished to mill-owners, dies, and manufactured and furnished shoes. One witness testifies that the defendant put the dies and shoes together, in some instances, in the shops, for the purpose of trying them to see if they would fit; but there is no testimony which shows that he has ever manufactured any of these "beveled bars." On the contrary, Tyrrell and Horn, his employees, and Belknap, say distinctly, that defendant never manufactured any of the bars, so far as they are aware; but he has manufactured shoes and dies upon the request of parties desiring to have them manufactured. There is no testimony showing that defendant ever manufactured or sold the beveled bars.

The testimony shows, too, that these dies may be, and sometimes are, used in connection with other shoes, and the shoes in connection with the other dies. They are not necessarily used together in the combination.

It is claimed that the defendant has made the shoes and dies without authority from the patentee, knowing they were to be used in violation of the patent, and that this renders him liable even if he did not make the entire machine. Now, if several different parties conspire together, one to make one part of a patented machine, another another, and so on, in order to avoid responsibility, it may well be, that each party so conspiring and engaged in making a complete machine, would, nevertheless, be liable, although he, himself, should actually make but one part of the perfected machine. However that may be, it is not this case. There is no testimony tending to establish such a case. Defendant casts certain parts for customers from patterns furnished by them, without inquiry as to their use. The pieces or elements of this combination are not new, and are capable of use out of this combination. Defendant had a right to cast and sell them to be used separately; and there is no testimony showing either that the beveled bars, or any mechanical substitute for them, were used in connection with any of the dies and shoes which defendant made without authority from Belknap; or that defendant understood that they were to be so used. Belknap, I believe, does say that bars were made by himself to use in combination with those dies and shoes which he ordered made by defendant for the purpose of introducing his invention; but, beyond that, there is no testimony tending to show that any of the parties made and used the beveled bars in connection with any of the dies and shoes which defendant made without authority from the plaintiff.

We have looked over the testimony carefully. My associate, Judge HILLYER, took very full notes, and I find that they agree with my recollection of the testimony. There is nothing, then, to show that this combination was made or sold by the defendant, or that he has made portions of it and sold them to other parties, with the knowledge that they were to be used in connection with the "beveled bars" for the purpose of making up a single complete machine.

We think, therefore, we are bound to advise the jury as asked.

(At the close of the opinion the counsel for plaintiff offered to prove further, that the "beveled bars" were, in fact, of no advantage or use in the combination, and might be dispensed with in practice without in any degree impairing the efficiency of the machine; that the whole advantage of the machine really consisted in the arrangement of the shoes and dies obliquely in connection with the disks, as in the other particulars described in the specifications, so as to cut outward in the manner of shears. But the court held that the whole combination, as an entirety, is the thing claimed as the invention, and patented; and that no part, however useless, can be dispensed with for the purpose of working out an infringement; citing Rich v. Close [Case No. 11,757]; Vance v. Campbell, 1 Black [66 U. S.] 427; Eames v. Godfrey, 1 Wall. [68 U. S.] 78; Carter v. Baker [Case No 2,472]. See, also, Hailes v. Van Wormer, 20 Wall. [61 U. S.] 353; Gould v. Rees, 15 Wall. [82 U. S.] 194.)

THE COURT thereupon advised the jury to return a verdict for the defendant, which was accordingly done.