## Case No. 4,687.

FARRINGTON et al. v. BOARD OF WATER COM'RS OF DETROIT.

[4 Fish. Pat. Cas. 216.][1]

Circuit Court, E. D. Michigan. Sept., 1870.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

A. Russell, for complainants.

A. D. Frazer and Moore & Griffin, for defendants.

LONGYEAR, District Judge. On the argument, the first point was abandoned, and it was conceded that, by the provisions of section 18, act of July 4, 1836 (5 Stat. 125), the extension of the patent inured to the benefit of the defendants, as purchasers of a machine, and conferred upon them the right to continue the use of the same.

But the second point is insisted on, and it is claimed, on the part of complainants, that the right of defendants to continue the use of the machine in use by them at the time of the extension of the patent, includes the right to repair merely, and does not include the right to renew any portion of the machine, or any of its parts, especially the tubular or hollow auger or bit, used in the machine, for the reason that it constitutes the valuable or novel thing patented.

The thing patented is described and defined in the specifications, as follows: "A new and improved machine, intended chiefly for boring pump logs. * * * The nature of my invention consists in, first, the employment or use of a tubular or hollow auger or bit, constructed and arranged as will be presently shown; and also in the combination of the tubular or hollow auger or bit, with a screw or worm-rod, arranged and operating, as will be hereafter described. * * * The bits or cutting portion (b) of the auger are attached to its outer end, and are placed over the bore of the auger. the points of the bits just passing the center of the bore, so as to cut a clear hole without leaving a core. * * * I do not use any screw on the end of my bit, or auger, as I find that a screw has a tendency to follow the grain of the wood. * * * Within the hollow or tubular auger D, there is placed a screw or worm-rod J. This screw or worm-rod represents the screw portion of an ordinary screw auger, and extends the whole length of the auger D, its outer end nearly touching the bits, C, of the auger. * * * The auger or bit and worm, J, are detached, and revolve independent of each other, by which means I am able to run the worm, J, at a much greater speed than the bit or auger, and which serves to clear the chips from the bit as fast as they are made, and prevents the same from choking. * * *

I am aware that the tubular or hollow auger, as such, is not new; nor do I claim it as new, but what I claim as new, and desire to secure by letters patent, is:

"1. The tubular or hollow auger or bit D, as constructed having the lips of the bits approach the centre, and yet separated from each other, doing without the use of a screw on the end of the bit, for the purpose of preventing the bit from following the grain of the wood.

"2. I claim the worm J, operating on its own axle, and independent of the revolutions of the auger or bits D, for the purpose of clearing away the chips as set forth."

As appears by affidavits, presented on behalf of defendants in opposition to the motion for a temporary injunction, these lips of the auger or bit will wear out by constant use in about forty days, so that they can not be longer repaired or made of any use whatever for the purpose intended, and unless replaced by new ones the machine could not be longer used. It is the replacing of such old worn-out lips by new ones that is complained of as an infringement, and to restrain which an injunction is asked.

It further appeared, upon the hearing of the motion, that for convenience in taking off and putting on these lips of the auger or bit, for the purpose of sharpening or repairing, the auger or bit is so constructed that a small portion of the outer end of it to which the lips are attached may be screwed off and on at pleasure, and it is by this means that the new lips are attached in place of the old ones. Although this device for taking off and putting on the lips is no part of the invention, yet it is a circumstance necessary to be stated in order to a full understanding of the questions presented.

The questions presented are:

1. Did the purchase of the defendants of the right to the use of the machine in question, invest them with the right to supply new lips to the hollow auger or bit whenever the old ones should become useless and irreparable by ordinary wear or by breaking?

2. How did the renewal of the patent after the purchase affect that right?

First. It is clear, from the specification above quoted, that the patent covers the following items:

1. The lips of the auger or bit, in question.

2. The combination of the hollow auger or bit with the new lips attached, with the screw or worm for removing the chips as fast as made, as described.

The "lips," and the "combination," are the only things that were new, or claimed as new, and of course were the only things patented. The "combination" included the "lips," and it is the combination, together with the ordinary machinery for giving its different parts the requisite motion, that constitutes the "machine," as a whole, which is mentioned in the first sentence of the specifications above quoted, which was covered by

the patent, which was sold to the defendants, and which they had the right to use. In this combination, the lips of the auger or bit constitute the effective element; but the inventor has so arranged them in the combination that the machine could not be continued in use without a complete renewal of them at short intervals. From the nature of the case, these lips could be but temporary in their relations to the use of the whole machine, and it must have been so understood by the inventor in selling and the purchaser in buying the machine. It has been held, by the supreme court, that in such a case the purchaser has the right to replace such temporary parts. See Wilson v. Simpson, 9 How. [50 U. S.] 109. This case is so nearly analogous to that one, that I quote from it at large. The question there was as to the right of an assignee of a Woodworth patent planing machine to replace the cutter knives when worn out or broken, and Mr. Justice Wayne, in delivering the opinion of the court, at page 125, says: "The right of the assignee to replace the cutter knives is not because they are of perishable materials, but because the inventor of the machine has so arranged them as a part of its combination, that the machine could not be continued in use without a succession of knives at short intervals. Unless they were replaced the invention would have been of but little use to the inventor or to others. The other constituent parts of this invention, though liable to be worn out, are not made with reference to any use of them which will require them to be replaced. These, without having a definite duration, are contemplated by the inventor to last so long as the materials of which they are formed can hold together in use in such combination. No replacement of them at intermediate intervals is meant or is necessary. They may be repaired as the use may require. With such intentions they are put into the structure—so it is understood by a purchaser, and beyond the duration of them the purchaser of a machine has not a longer use. But if another constituent part of a combination is meant to be only temporary in the use of the whole, and to be frequently replaced, because it will not last so long as the other parts of the combination, its inventor can not complain if he sells the use of his machine, that the purchaser uses it in the way the inventor meant it to be used, and in the only way in which the machine can be used. Such replacement of temporary parts does not alter the identity of the machine, but preserves it, though there may not be in it every part of its original material."

I think the case of Wilson v. Simpson clearly decides this one. It matters not that in that case the cutter knives were not a part of the invention, and that in this case the lips of the auger or bit are. The only question is, are they, from the nature of things, temporary in their relation to the use of the whole combination? Being such, the right to replace them clearly exists.

Second. The extension of the patent does not in any manner affect or impair the right. The right to replace, as has been seen, depends upon the right to use the machine. The continued right to use the machine is clearly guarantied by section 18 of the act of July 4, 1836, above cited, and was conceded upon the argument.

The motion for a preliminary injunction is denied.