ST. LOUIS CAR-COUPLER CO. v. SHICKLE, HARRISON & HOWARD IRON CO.

(Circuit Court, E. D. Missouri, E. D. November 30, 1895.)

1. INFRINGEMENT OF PATENTS—RIGHT TO MAKE REPAIRS.

A purchaser of a patented article may use it until it is worn out, and may repair and improve it as he pleases, provided that such repair and improvement do not amount to a reconstruction of the patented invention. Wilson v. Simpson, 9 How. 109; Chaffee v. Belting Co., 22 How. 217; Cotton-Tie Co. v. Simmons, 1 Sup. Ct. 52, 106 U. S. 89,—followed.

2. SAME—MANUFACTURE AND SALE OF PARTS OF A COMBINATION.

It is an infringement to manufacture and sell that part of a machine which constitutes the peculiar feature of the combination, for the purpose of replacing the same when broken or worn out in the hands of purchasers; and the mere fact that such part is more liable to breakage than other parts does not bring it within the rule which allows the replacing of mere temporary parts, such as the knives of a planing machine.

3. SAME—CAR COUPLINGS.

The "coupling head" or "knuckle," which is the peculiar and unique feature of the combination constituting the improved car coupler of patent No. 519,216 (reissue No. 10,941), though more liable to breakage than other parts of the device, is not a mere temporary part, which may be made and sold for the purpose of replacing a broken or worn-out part without infringing the patent.

This was a bill by the St. Louis Car Coupler Company against the Shickle, Harrison & Howard Iron Company for alleged infringement of a patent for an improvement in car couplers.

Henry M. Post, for complainant.

T. A. Post and Geo. H. Knight, for defendant.

ADAMS, District Judge. The facts in this case are simple. The complainant, being the owner of letters patent of the United States

No. 519,216, and reissued letters patent No. 10,941, for new and useful improvements in car couplings, employed the defendant to manufacture about 1,000 complete couplers, according to the patented device. The defendant proceeded under such employment, and, after finishing the same, continued to manufacture a certain important element or part of the patented device, called in the patent the "coupling head," and generally referred to in the argument of counsel as the "knuckle," and has since then kept a stock of such knuckles on hand for sale, and has sold and disposed of them, without the sanction or authority of the complainant. The defendant claims that it could lawfully manufacture and sell these knuckles to such parties as had purchased the complete device, and who needed a knuckle for the purpose of supplying defective or broken ones in such couplers as they had before that time become possessed of. Complainant's patent is what is known as a "combination patent." For the purposes of this case, it does not seem necessary to more minutely describe the invention than to say that it consists (1) of the draw head, so constructed as to permit the attachment to it of the coupling head or knuckle; (2) the knuckle itself, consisting of a ⊃ shaped piece of metal, so connected with the draw head by a pivot pin running vertically through the draw head and through the knuckle as to permit of a partial revolution of the knuckle into a socket made for its reception in the draw head; (3) a locking pin, which, when two cars having these draw heads and knuckles attached thereto come into collision, automatically drops so as to lock the impinging knuckles together. From an inspection of the drawings of the patent and the model used by counsel at the argument, it is manifest that the knuckles or coupling heads are the important features of the combination. In the description of the patented device found in the patent, it is said:

"And when the coupling head is removed from the draw head, which can be done by withdrawing the pin, E, the remaining portion of the construction constitutes a sufficient means, of itself, for coupling with any center-draft coupling."

In other words, as I understand it, the draw heads themselves are so constructed that they may be used with any center-draft coupling; but the coupling heads or knuckles are unique, and can be used only in connection with the draw heads of the combination of this patent. It is these knuckles which the defendant has been manufacturing and keeping in stock for sale to such persons as required them for replacement of broken knuckles in couplings already possessed by them.

No question is raised as to the validity of complainant's patent, or as to the title of the complainant to such patent. At the oral argument it was suggested by defendant's counsel that the evidence failed to show that the knuckles manufactured by defendant embodied the device of complainant's patent. The case, however, discloses that this was never intended by the parties to be disputed, and, even were it otherwise, there is sufficient evidence to make prima facie proof that the knuckles manufactured and sold by de-

fendant involve the invention of the complainant. For instance, in the testimony of William V. Wolcott, president of the complainant company, the following appears, namely:

"Q. You heard the testimony with reference to the various letters patent. Under what letters patent were those couplers manufactured by the Shickle, Harrison & Howard Iron Company? A. The couplers made by the Shickle, Harrison & Howard Iron Company were made under reissue 10,-941 and 519,216. Q. Now, will you state how those knuckles or couplers which you say were manufactured by the Shickle, Harrison & Howard Iron Company, after you had transferred your business to other manufacturers, compared or conformed to the letters patent you have just mentioned? A. They were substantially the same as described."

This testimony, taken in connection with that of John M. Harrison, secretary and treasurer of the defendant company, must be held sufficient, in the absence of any testimony to the contrary, to make a prima facie case on this point.

The real and only question argued by counsel, and presented to the court for its decision, is whether the knuckles so manufactured and sold by defendant are "repairs," within the meaning of the rule which entitles a purchaser of a patented article to repair it when worn out. The rule gathered from the leading cases of Wilson v. Simpson, 9 How. 109, Chaffee v. Belting Co., 22 How. 217, 223, and Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52,—is that a purchaser of a patented article may use it until it is worn out, and may repair and improve it as he pleases, provided that such repair and improvement do not amount to a reconstruction of the patented invention. Bearing in mind that the knuckle is the chief element in the patented combination, it seems to me that the use of it to supply the place of knuckles worn out or broken in actual use amounts to reconstruction, and not repair. In the Cotton-Tie Case, supra, the supreme court considered a patented device known as a certain metallic cotton-bale tie, consisting of a band of iron in combination with a buckle. While the patentee manufactured these ties, and stamped on the buckles the words, "Licensed to use once only," the court seems to dispose of the case independently of such stamp, and holds that a person who purchased these ties could not, after having used them, straighten out and rivet together pieces of bands, and cut them into proper lengths, and then sell them with the buckles, to be used as ties; and this, too, notwithstanding the fact that the buckles were not injured, and required no treatment for the second use,—that such use was an infringement. In the case of Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276, a combination consisting of a carbon filament in use in a vacuum was before the court. The lamp consisted of a glass receiver or bulb, into which the carbon filament is introduced by means of leading-in wires, all so prepared and constructed as to create and maintain a nearly perfect vacuum. The carbon filaments do not last as long as the glass bulb. The defendant in that case undertook to utilize the bulbs after the filament was destroyed by use, by making a hole in it and introducing a new filament, exhausting the air, and closing the hole by fusing a piece

of glass over it. This the defendant justified on the ground that it was repair, and not reconstruction. The court held that it amounted to reconstruction, and enjoined the defendant, as an infringer. To the same effect, also, is the case of Aiken v. Print Works, 2 Cliff. 435, Fed. Cas. No. 113. The general principle relied on by defendant's counsel is recognized, that if any element of a combination is temporary in its relation to the whole combination, —that is to say, if it is liable to be often worn out, and if the inventor contemplates that it would have to be frequently replaced anew during the time the machine, as a whole, might last,—such circumstance and intention would entitle an owner of the patented device to procure or manufacture such temporary part at his pleasure, and thereby incur no liability as an infringer. Wilson v. Simpson, supra; Farrington v. Commissioners, 4 Fish. Pat. Cas. 216, Fed. Cas. No. 4,687; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627; Wallace v. Holmes, 5 Fish. Pat. Cas. 37, Fed. Cas. No. 17,100; Schneider v. Pountney, 21 Fed. 399. But the facts do not support their contention. It appears that these knuckles turned out to be more liable to breakage than the draw head,—the other main element of the combination,— but neither the physical relation of these parts to each other, nor the evidence in the case satisfies me that the knuckle was regarded by the inventor as temporary, and as necessarily requiring to be frequently replaced, in the sense the blades or knives of the planing machine discussed in Wilson v. Simpson, supra, were regarded, or in the sense the bits or lips of the auger discussed in Farrington v. Commissioners, supra, were regarded. The case of Wallace v. Holmes, supra, is one similar in its essential facts to the case at bar. The complainants in that case had a patent for an improved burner in combination with a chimney. The defendants manufactured and sold the burner without the chimney, leaving purchasers to supply the chimney, without which such burner is useless. The court says:

"It is urged that, having made and sold burners only, the defendants are not infringers, though they have sold them throughout the country in competition with the complainants, and have, to their utmost ability, occupied the market, with the certain knowledge that such burners are to be used by the addition of a chimney. Manifestly, there is no merit in this defense," etc.

This knuckle is not an ordinary tool or piece of mechanism, which can be procured at any general hardware store, but is unique, and can be used only in connection with the balance of complainant's device. There can be no doubt, therefore, that the defendant intended to manufacture and sell the knuckle to be used in, and as forming an important and essential part of, the complainant's patented device. If the defendant can do this with impunity, it, or any other person, can certainly manufacture and sell the other less important parts, and thereby the value of complainant's monopoly will be limited to the first sales made by it. This cannot be the law. A decree may be prepared finding that defendant infringes, and for an injunction and accounting.