SHICKLE, HARRISON & HOWARD IRON CO. v. ST. LOUIS CAR-COUPLER CO.

(Circuit Court of Appeals, Eighth Circuit. November 30, 1896.)

1. PATENTS—INFRINGEMENT—RIGHT TO REPAIR.
   A purchaser of a patented machine, consisting of several distinct parts, has a right to repair a part, not separately patented, which is broken by accident or worn out by use, provided the machine, as a whole, retains its identity, and what is done does not amount to reconstruction; but he has no right, under the guise of repairs, to make a new machine.

2. SAME—CAR COUPLERS.
   It is no infringement to make and sell, for purposes of repair only, to purchasers from the patentee, the knuckle of the automatic car coupler covered by the Lorraine & Aubin reissue (No. 10,941) and the Wolcott & O'Hara patent (No. 519,216); it appearing that, while this is one of the most important elements of the combination, it is yet peculiarly liable to be broken by shock or strain.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

T. A. Post and George H. Knight, for appellant.
Henry M. Post, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The St. Louis Car-Coupler Company, the appellee, sued the Shickle, Harrison & Howard Iron Company, the appellant, for the infringement of several patents,—among others, for the infringement of reissued letters patent No. 10,941, granted to Madison J. Lorraine and Charles T. Aubin, dated June 26, 1888, and original letters patent No. 519,216, granted to William V. Wolcott and Henry O'Hara on May 1, 1894. On the trial of the case in the circuit court the complainant below abandoned its charge of infringement, except as to the two patents last described. No reference, therefore, need be made to the other patents referred to in the bill of complaint. Both of the aforesaid patents on which the claim of infringement is predicated cover an improvement in car couplers, and counsel for the complainant below concedes that the patented device covered by both patents consists, as an entirety, of four parts or elements: First, the drawheads or shanks; second, the coupling head or knuckle which is used to connect them; third, the pivot pin on which the knuckle turns; and, fourth, the locking pin. All the claims of the patents are of the class known as "combination claims," in which the several parts of the device are claimed in combination in several different ways. In no instance is any one part or element of the complete coupler claimed by itself, as a new article of manufacture or otherwise, but each claim is founded upon a combination of three or more of the aforesaid elements. Usually three parts or elements of the device are brought into combina-

tion by the language of a claim. Counsel for the complainant below further admits that the proof at the trial did not show that the defendant had either manufactured or sold, or offered to sell, the complete coupler. He claims, however,—and of that fact there is no doubt,—that the defendant has manufactured and sold that part of the device which in the specification is termed the "coupling head." This part of the device may be aptly called the "knuckle," and it will be referred to hereinafter by that name. It is accordingly insisted that the manufacture and sale of that part of the device without the consent of the complainant constitutes an infringement of the patents.

The proof shows, without substantial contradiction, that the knuckles which have been manufactured and sold by the defendant company were manufactured and sold by it under the following circumstances: The defendant at one time had manufactured the entire coupler covered by the patents in suit, under and by virtue of a contract with the complainant company, and the couplers thus manufactured had been sold by the complainant to various railway companies for use on their cars. After the aforesaid contract between the parties had been terminated, and the defendant had ceased to manufacture the entire coupler, it made, and at various times sold to the purchasing agents of the aforesaid railway companies, certain knuckles, which were bought by said companies, as it seems, to take the place of knuckles that had been broken. The question to be determined, therefore, upon this record, is whether the manufacture and sale of knuckles for the purpose last stated—that is to say, the sale thereof for the sole purpose of repairing broken couplers—to persons or corporations who had previously purchased such patent couplers from the complainant, and were entitled to use them on their cars, constitutes, in law, an infringement of the patents. The decision of this question turns on the further inquiry whether the purchase of new knuckles by said railroad companies, and the substitution of the same in place of other knuckles that had been worn out or broken, amounted to a reconstruction or a repair of the couplers which were then in use. If the respective railway companies who had bought couplers which were covered by the patents in suit had the right to repair them to the extent of replacing knuckles that had been broken, then it is obvious that they had the right to employ the defendant company to make the knuckles for that purpose, and the latter company incurred no liability by so doing.

The rule is well established that one who purchases a machine or mechanical contrivance consisting of several distinct parts, which, as a whole, is covered by a patent, has the right, by virtue of his purchase from the patentee, to repair a part of the machine or device which happens to be broken through accident, or which becomes so far worn as to render the machine inoperative, provided the machine, as a whole, still retains its identity, and what is done in the way of rendering it operative does not amount to reconstruction, and provided, further, that the part so replaced is not separately covered by a patent. The sale of a patented article by the patentee frees it from the grasp of the monopoly, and the purchaser may thereafter exercise the same dominion over it which he exercises over his other property. The right to

thus repair a patented device is incidental to ownership. The fact that it is patented does not lessen the owner's right to put it in order when it gets out of repair, unless, considered as a whole, it is worn out and useless. When a patented machine is accidentally destroyed, or when it is practically worn out, the owner thereof, under the guise of repairing it, cannot make a new machine. In such cases he must cast it aside and buy a new one from the patentee. Wilson v. Simpson, 9 How. 109. 123; Chaffee v. Belting Co., 22 How. 217, 223; Tie Co. v. Simmons, 22 O. G. 1976; Id., 106 U. S. 89, 1 Sup. Ct. 52; Farrington v. Board, 4 Fish. Pat. Cas. 216, Fed. Cas. No. 4,687; Gottfried v. Brewing Co., 8 Fed. 322; Aiken v. Print Works, 2 Cliff. 435, 1 Fed. Cas. 113; Singer Manuf'g Co. v. Springfield Foundry Co., 34 Fed. 393; Wallace v. Holmes, 1 O. G. 117, 5 Fish. Pat. Cas. 37, 16, and Fed. Cas. No. 17,-100.

While the foregoing propositions are well settled, a difficulty is sometimes encountered in applying them. It is not always easy to determine whether the replacing of a part or element of a patented machine should be regarded as a reconstruction of the machine, or simply as a repair which does not destroy its identity. This remark is applicable in a measure to the case in hand. It may be conceded that the question to be decided is not altogether free from doubt. While no one would deny that a purchaser of one of the patent couplers now in question would have the right to replace the pivot pin or the locking pin, if one of these should happen to be broken, yet it may be admitted that it is not so obvious that he would have the right to replace a broken knuckle. The circuit court concluded that the manufacture and substitution of new knuckles for those which had been broken should be regarded as a reconstruction of the car coupler, rather than a repair. It was led to entertain this view, as it seems, because it regarded the knuckle as the chief element of the patented combination; also, because the knuckle is unique in form and structure, and only susceptible of use in connection with the other elements of the complainant's device. St. Louis Car-Coupler Co. v. Shickle, Harrison & Howard Iron Co., 70 Fed. 783. It is undoubtedly true that the patentee did display considerable ingenuity in devising the peculiar shaped knuckle. It is also true that the knuckle is an important element of the coupling device in question, and that it is utterly useless except in combination with the drawheads forming the coupler. But we are not able to say that for these reasons the substitution of new knuckles for others that had been broken should be regarded as a reconstruction of the coupler. Other considerations, we think, are entitled to greater weight. The knuckle, or "coupling-head," as it is termed in the patent, is an irregular, hook-shaped piece of cast iron or steel, which is interposed between the drawheads or shanks of the car coupler, and is perforated with holes in which to insert the locking pin and pivot pin. Owing to its position between the drawheads, it frequently receives a severe blow or shock when, in the act of coupling, two cars come together, besides being subjected to a great strain when a train is started or is in motion. The proof shows that it is much more liable to be broken than other parts of the coupling device, and from the peculiar shape of the knuckle, and its location between the drawheads, it seems obvious that the knuckle

will be broken frequently, while the drawheads remain intact, and that the knuckle is therefore less durable than other parts of the coupler. The president of the complainant company admitted that the knuckle of the coupling device is generally the first to break, and we can readily credit his further statement that knuckles have been known to break the first time they were used in pulling an empty car out of the yard. Moreover, the drawheads of the coupling device, besides being more durable than the knuckle, are also an essential part of the patented combination. It is not wholly accurate to say that the knuckle is the chief element of the combination. The drawheads have an equally important function to perform. They are not like the drawheads in use in the ordinary coupling device, but are of a peculiar design, being so cast as to fit or complement the knuckle and render it operative. The drawheads are also much the larger part of the coupling device, and doubtless cost more than the knuckle. Neither can we say that the knuckle is the only part of the coupler which affords evidence of invention; for that is found in the conception of the coupler as a whole, and in the shape and arrangement of all its parts, including the drawheads.

In view of the foregoing considerations, we think that a purchaser of the patent coupling device should be accorded the right to replace a broken knuckle without the payment of an additional royalty, provided the drawheads remain intact and serviceable. It can hardly be supposed that a railroad company would equip its cars with a patent coupling apparatus like the one in controversy, one part whereof is liable to be broken long before the drawheads are worn out, unless the purchase of the coupling apparatus was made on the implied understanding that the purchaser should have the right to replace that part of the apparatus, if it was accidentally broken, without being compelled to pay further tribute to the owner of the patent. In all of its essential features, the case disclosed by the record bears a strong resemblance to several cases heretofore cited in which the right of a purchaser of a patented device to replace a part thereof which had been worn out was upheld. Thus, in the leading case of Wilson v. Simpson, 9 How. 109, the patent covered a planing machine, the cutters and knives of which were not as durable as other parts of the patented combination, but had to be renewed at intervals to render the planing machine serviceable. It was held that a purchaser of the machine, by virtue of his purchase from the patentee, acquired the right to renew the cutters and knives when they were worn out, and that such renewal should be regarded as a repair of the machine which did not destroy its identity. In the case of Farrington v. Board, 4 Fish. Pat. Cas. 216, Fed. Cas. No. 4,687, the patent covered a tubular or hollow auger for boring pump logs. Attached to the outer end of the hollow tube, and forming a part of the patented combination, were certain bits or lips, turned inward towards the center of the tube, by means of which the boring was effected. These lips were not as durable as other parts of the patented combination, but would wear out after the auger had been in use for about 40 days. It was held that the owner of the device might replace the bits or lips when they were so far worn as to be no longer fit for use. In the case of Gottfried v. Brewing Co., 8 Fed. 322, the patent involved covered a device for pitching barrels; consisting, as

it seems, of a furnace, grate, ash pit, and blower pipes, by means of which a blast of hot air was driven into a barrel for the purpose of pitching it. It was ruled that a purchaser of the device had the right to renew the blower pipes and grates of the furnace when they were burned out, without being subject to the charge of infringement, inasmuch as it appeared that these parts of the patented combination were less durable than the other parts. In our judgment, the principle which underlies these decisions is strictly applicable to the case at bar. The knuckle of the complainant's car coupler is shown to be less durable than the drawheads, but no more essential to the successful operation of the coupling apparatus. The knuckle is not claimed separately, and is not in itself a patented article. It follows, we think, that, within the rule which is deducible from the cases last cited, a person who purchases one of the patent car couplers thereby acquires the right to replace a knuckle which happens to be broken, provided the drawheads still remain serviceable. To that end, we think that a purchaser may either manufacture a knuckle, or procure some one else to manufacture it for his use. It must be borne in mind, however, that the right to manufacture and sell the knuckle in question should be confined strictly within the limits last stated. We would not be understood as deciding that the defendant company has the right to manufacture the knuckles which form a part of the complainant's device, and to sell them indiscriminately to all persons who see fit to buy them; for, clearly, such is not the law. We have no doubt that the defendant would be liable as an infringer if it so happened that the knuckles by it made and sold should be used by the purchasers in the construction of complete couplers such as are described in the complainant's patents. Wallace v. Holmes, 1 O. G. 117, 5 Fish. Pat. Cas. 37, 45, and Fed. Cas. No. 17,-100. Therefore, if the defendant continues to manufacture the coupling heads or knuckles, and keeps them in stock, it must see to it that they are sold, for the purpose of repairing the patent coupling device, to persons or corporations who have acquired the right to make and use them for that purpose. The testimony contained in the present record does not show that any sales have been made by the defendant company except to certain railroad companies who had theretofore bought patent car couplers from the complainant or its predecessors in interest, and were entitled to use them. Neither does it show that the knuckles so bought by said railroad companies were used for other purposes than to repair such couplers as were then in use. Under these circumstances, it must be held that the complainant below failed to show an infringement of its patents. The decree of the circuit court is accordingly reversed, and the case is remanded to that court, with directions to dismiss the bill of complaint at the complainant's cost.