BASSICK MFG. CO. v. LARKIN AUTOMO-
TIVE PARTS CO. et al.

District Court, N. D. Illinois.   June 18, 1926.

No. 5180.

1. Patents ⬳327(14)—Jobber and mail order retailer is bound by judgment against manufacturer, from whom it purchases patented article, holding patent valid.

Jobber and mail order retailer is bound by judgment against manufacturer, from whom it purchases patented article, holding patent valid.

2. Patents ⬳328—Gullborg patent, No. 1,307,-734, for lubricating system, claims 1, 2, and 6, held valid and infringed.

Gullborg patent, No. 1,307,734, for lubricating system, claims 1, 2, and 6, held valid and infringed.

3. Patents ⬳328—Gullborg patent, No. 1,307,-733, for lubricating device, claims 3, 4, and 5, held valid and infringed.

Gullborg patent, No. 1,307,733, for lubricating device, claims 3, 4, and 5, held valid and infringed.

4. Patents ⬳328—Zerk patent, No. 1,475,980, claims 2, 3, and 5, held valid and infringed.

Zerk patent, No. 1,475,980, claims 2, 3, and 5, held valid and infringed.

5. Patents ⬳259(2)—Sale of one element of patent combination, with intent to bring about its use in such combination, is infringement.

Sale of one element of patent combination, with intention and purpose of bringing about its use in such combination, constitutes infringement.

6. Patents ⬳255—Patentee's vendee may make a legitimate repair or replace an element rapidly consumed or deteriorated in normal use of combination.

Patentee's vendee has right to make a legitimate repair or to replace any element which is rapidly consumed or deteriorated in normal or expected use of combination.

7. Patents ⬳255—Patentee's vendee may not reconstruct or reproduce patented invention.

Patentee's vendee does not have right to reconstruct or reproduce patented invention.

8. Patents ⬳255—Patentee alone may supply parts for reconstruction or reproduction of patented invention.

Patentee is only one having right to supply parts for reconstruction or reproduction of patented invention.

9. Patents ⬳259(2)—Sale of component part or complete combination, with intent that purchaser will combine with other parts to make up complete combination, is contributory infringement.

Sale of component part of complete combination, with intention that purchaser will combine that part with other parts to make up complete combination, is contributory infringement.

10. Patents ⬳259(1)—Mere formal notice that component parts of patent device are not to be used in infringing way does not absolve seller.

Mere formal notice that component parts of patent device are not to be used in infringing way does not absolve seller from liability.

11. Judgment ⬳573, 574—Force of estoppel in prior adjudication lies in judgment itself, and it is not finding of court or verdict of jury which concludes parties.

Force of estoppel in prior adjudication lies in judgment itself, and it is not finding of court or verdict of jury which concludes parties.

12. Patents ⬳327(1)—Statement by court in patent infringement suit as to right to sell parts as repairs held declaratory, when not raised in record, and not res judicata.

Statement of court in patent infringement suit as to right to sell parts as repairs and replacement, without anything in record to raise such question, held mere declaratory judgment, and not res judicata thereof.

In Equity.   Patent infringement suit by the Bassick Manufacturing Company against the Larkin Automotive Parts Company and another.   Decree for plaintiff.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill. (Lynn A. Williams, of Chicago, Ill., of counsel), for plaintiff.

Cromwell, Greist & Warden, of Chicago, Ill. (Edward L. Reed, of Dayton, Ohio, Alfred M. Allen, of Cincinnati, Ohio, and Wm. Nevarre Cromwell, of Chicago, Ill., of counsel), for defendants.

LINDLEY, District Judge.  Plaintiff sues Montgomery Ward & Co. and the Larkin Automotive Parts Company, alleging infringement, direct or contributory, of the following patents: Gullborg, No. 1,307,734, claims 1, 2 and 6; Gullborg, No. 1,307,733, claims 3, 4, and 5; and Zerk patent, No. 1,475,980, claims 2, 3, and 5.

[1, 2] The claims in issue under Gullborg, 1,307,734, in previous litigation between the plaintiff and the Larkin Company, were upheld by Judge Hickenlooper in Bassick Manufacturing Co. v. Larkin Automotive Parts Co.;[1] the court holding the patent valid against the defense of aggregation, in that a superior lubricating system resulted from the combination of elements and means disclosed, many, if not all, of which were old, and in that the result of perfect oiling of a machine was achieved in a more effective and perfect manner than had theretofore been known. Judge Westenhaver, in the case of Bassick Manufacturing Co. v. Lyman Manufacturing Co.,[1] came to a similar conclusion.  The de-

[1] See opinion on appeal 18 F.(2d) 29.

cision of Judge Hickenlooper is res adjudicata as against the Larkin Company.

Montgomery Ward & Co. is a jobber and mail order retailer, purchasing from the Larkin Company, selling chiefly upon mail orders. Under the facts in this record, and under the governing rules stated in 34 Corp. Juris, p. 868 et seq., and in Norton v. San José Fruit Packing Co., 83 F. 512, 27 C. C. A. 576, decided by the Circuit Court of Appeals for the Ninth Circuit it is in privity with the Larkin Company and bound by the first-mentioned decision. However, even if Montgomery Ward & Co. were not bound by the previous decision, a careful consideration of the evidence leads to the conclusion that the patent is valid, for the reasons stated in the two cases above cited. Its validity does not seem to have been questioned in Bassick Manufacturing Co. v. Auto Equipment Co., 13 F.(2d) 463, recently decided by the Circuit Court of Appeals for the Seventh Circuit.

[3, 4] Nor was the validity of Gullborg, 1,307,733, questioned in the last-mentioned case, or in the case of Bassick Manufacturing Co. v. Standard Products Manufacturing Co., decided by Judge Morris in the District of Delaware, 19 F.(2d) 937. However, the validity of the claims of this patent has never been adjudicated between the parties now before the court. Upon a careful consideration of the patents, the prior art references, and the evidence of prior use, the court is satisfied of the validity of the claims. Each of the prior art patents offered by the defense discloses one or more of the elements of the combinations described, but none of them discloses the complete combination of any of the claims, or discloses a device which has the mode of operation for the successful utility of the plaintiff's appliance as disclosed and claimed in this patent. No one of the devices of the prior art could be substituted without substantial change. The same is true of the evidence of prior use. A new and useful appliance has been developed by plaintiff under the claims of this patent. The same is true of Zerk, 1,475,980, claims 2, 3, and 5.

The court is of the further opinion that the defendants' construction is readable upon the claims relied upon by plaintiff. It is of such character that it will be embraced within any range of equivalents, however narrow.

The serious question in this case is as to the propriety of defendants' admitted actions. The plaintiff manufactures and sells separately, or as a whole, the different appliances necessary to constitute a complete lubricating mechanism for automobiles. This consists of a seamless tube grease container, which is equipped with a screw-threaded plunger for forcing the grease from the tube under the compression resulting from screwing the plunger; a flexible detachable metal conduit, through which the grease flows from said container to a nozzle or coupler suitable to be affixed to the part to be lubricated; a nozzle or coupler at the end of the conduit equipped with bayonet type coupling mechanism, with certain detailed equipment for valves, and nipples or pin fittings intended to replace grease cups formerly used and so equipped as to screw into the standard openings provided for grease cups on automobiles, which in turn are equipped with bayonet receiving attachments intended to co-operate with the nozzle or coupler of the grease gun conduit. These compressors, couplers and fittings make up the combination of Gullborg, 1,307,734, and Zerk, 1,475,980; claims 3, 4, and 5 of Gullborg, 1,307,733, cover the invention constituting the pin fitting only; claims 2, 3, and 5 of Zerk, 1,475,980, cover the nozzle and fitting of the so-called Alemite-Zerk type.

The invention involved is an unusual one, in that the component parts of the complete combination are not installed by the plaintiff, but are placed upon and in the individual cars, by some subsequent vendee, and brought into co-operative action by the ultimate user of the lubricating system. The manufacturer who equips his car with the appliances simply supplies the bearings with pin fittings, and puts the compressor, hose, and coupler in the car or tool kit. Only the ultimate user brings all of the component parts into combination. A large percentage of automobile manufacturers have adopted the plaintiff's construction for original lubricating systems, but more than half of its sales are to jobbers, who sell any number or all of the component parts to retail dealers or to ultimate users, who make an installation upon cars not originally equipped with any such system. The millions of Ford automobiles now in existence are a potential market for plaintiff's invention. Other automobiles, not so equipped at the factory, likewise furnish a potential market.

The Larkin Company manufactures similar equipment, which, as stated, infringes upon the plaintiff's product. It advertises the various component parts of the combination in its catalogue. Apparently the only thing which plaintiff includes in its list of advertised products in this connection, which defendant, Larkin Company, does not include, is lubricating grease. Each company separately prices each of the parts. The only difference between the two companies' business is

that the plaintiff sells the various articles under the patents here relied upon; whereas, Larkin distributes them under the name "Thuro," and each defendant inserts in its advertising these words: "The articles [compressors, pin fittings, hose, boosters, etc.] are authorized for sale or use only as repair and replacement parts for the Alemite high pressure lubricating system." In some instances the word "only" is omitted. The Larkin Company states in its catalogue that it has an established sales organization, traveling in every state of the Union and Canada, with representation in the leading foreign countries, and that 400 of the country's foremost jobbers and distributors are now handling Thuro products, that Thuro sales increased 400 per cent. in the first eight months of 1925 over the entire year of 1924, that sales possibilities include 500,000 prospective customers, and that a Thuro sales representative is in every territory to assist all jobbers and distributors.

Plaintiff claims that, as a result of this situation, its tremendous volume of business is being very greatly depleted by the very extensive product and sales of the Larkin Company; that the catalogue restriction that the parts are sold for replacement and repair purposes is not rightful, and is not adequate protection of plaintiff's rights; that the doctrine that a patented article may be repaired or replaced without infringement has no place in the production and sale of this equipment; that the restriction is ignored and ineffective, and that contributory infringement results. The defendants contend that the manufacture, production, and sale of various parts by the Larkin Company and its vendees for repairs and replacement only is proper, that Judge Hickenlooper has so adjudged, and that it is not infringing directly or contributorily upon plaintiff's rights.

It appears that Montgomery Ward & Co. made sales to one McKiernan of four so-called Alemite fittings for use in combination with another company's compressor, hose, and coupler, which the salesman showed to the purchaser at the time of the purchase, and with which he said he desired to use the pin fittings at that time purchased. These four fittings were in one envelope, which did not carry any label stating that the articles were sold for repair or replacement purposes. When the purchaser obtained the fittings, he might have combined and used them with the compressor and coupler, none of which was manufactured by the plaintiff, but all of which were the equivalent of plaintiff's product. The same defendant sold to one Isham 30 pin fittings, entered on the sales slip, "30

Alemites, $2.40." These fittings have no utility, except in combination with plaintiff's patent. The same defendant sold to one Stauffer 20 one-eighth inch straight pin fittings, 15 one-eighth inch elbow fittings, one hose and coupler, and one compressor, sufficient to constitute a complete outfit for an automobile. The fittings only were labeled as being sold for replacement purposes. Each sale was made in the regular course of business.

The circumstances indicate a readiness and willingness of the vendor to make similar sales at any time. The testimony in behalf of the defendant on cross-examination indicates that the understanding of Montgomery Ward & Co. was that it might sell all of the parts necessary to constitute an entire lubricating system, provided it was not so expressly stated in the contract of sale; that it might sell any one of the component parts to anybody for any purpose, so long as it was not stipulated that it was a new installation. The circumstances under which the sales were made indicate that any party might buy all of the parts necessary to replace an entire old system, or to install a complete new system. The bulletin of Montgomery Ward & Co., as finally adopted, indicated a willful intent to evade the restriction.

[5-10] The law as to repair and replacements of patented articles is summarized by the Circuit Court of Appeals for the First Circuit in Goodyear v. Jackson, 112 F. 146, 50 C. C. A. 159, 55 L. R. A. 692, where the following propositions are stated: That the sale of one element of a combination with the intention and purpose of bringing about its use in such a combination constitutes infringement. That a patentee's vendee has a right to make a legitimate repair. That a patentee's vendee has a right to replace an element which is *consumed or rapidly deteriorated in the normal use* of the combination, especially if the element thus consumed is inexpensive as compared with the balance of the machine of which it is an element, but that the patentee's vendee does not have the right to reconstruct or reproduce the patented invention. That any one has the right to furnish supplies for *a legitimate repair or for replacing an element rapidly consumed or deteriorated in the normal and expected use of* the combination, but that no one but the patentee has the right to supply parts for reconstruction or reproduction of the patented invention. That "each case as it arises must be decided in the light of all the facts and circumstances presented, and with an intelligent comprehension of the scope, nature, and purpose of the patented invention and the fair and reasonable

intention of the parties" and "less by definitions or technical rules than by the exercise of sound common sense, and an intelligent judgment." The sale of a component part of a complete combination with the intention that the purchaser will combine that part with other parts to make the complete combination is in and of itself an act of contributory infringement. It is unnecessary to show that the purchaser actually carried out and completed the vendor's intention. See Wallace v. Holmes, 29 Fed. Cas. page 74; Parsons Non-Skid Co. v. Atlas Chain Co., 198 F. 399, 117 C. C. A. 286; and Thomson-Houston Electric Co. v. Ohio Brass Co., 80 F. 712, 26 C. C. A. 107. Nor can it be contended that the mere formal notice that the component parts are not to be used in an infringing way absolves the defendants from liability. Sandusky v. DeLavaud (C. C. A.) 274 F. 607; Weed Chain Tire Grip Co. v. Cleveland Chain & Mfg. Co, (C. C.) 196 F. 213.

Furthermore, it would seem apparent, as stated by Judge Westenhaver, that "the right to furnish parts of a combination for repair or replacement, as stated in Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500, and limited by the Victor Talking Machine Co. Case [213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816], has no application to pin fittings having the characteristics and designed for substituted use such as was here shown." See Bassick v. Lyman, supra. Any one has a right to furnish supplies for a legitimate repair, or for replacing any element rapidly consumed or deteriorated in the normal or expected use of the combination constituting the invention of the patent; but it seems to the court manifest that these pin fittings and the other component parts are not perishable, or rapidly consumed in use, within the meaning of that term as applied and defined by the various courts. The pin fittings are made of hard metal, firmly screwed into the parts of an automobile or other machine requiring lubrication, and remain there indefinitely. They are not subjected to any use, friction, or strain that wears them out. The compressor, the conduit, the bayonet coupling, do not wear out in a short time, but last indefinitely. They are very seldom broken.

None of them can be likened to the Cutter blades of Wilson v. Simpson, 9 How. 110, 13 L. Ed. 66, or to the gelatine bands of Heyer Duplicator Co. v. Ditto, Inc. (C. C. A.) 6 F. (2d) 578; Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189; or the lips of the auger head of Farrington v. Commissioners, 8 Fed. Cas. 1,086 (No. 4,687); or

the typewriter ribbons of Wagner Typewriter Co. (C. C.) 144 F. 405; or the metal bushing for a packing box subjected to "wear or destruction" of O'Rourke v. McMullen (C. C.) 150 F. 338; or the paper record dials of Williams v. Barnes, 234 F. 339, 148 C. C. A. 241; or even to phonograph records of Leeds & Catlin v. Victor Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816, there forbidden replacement. They are similar in character and use to the tools of the automobile kit. They are surely more permanent in character than the wooden spool of Heyer Duplicator Co. v. Ditto. The Circuit Court of Appeals for the Seventh Circuit in that case [6 F.(2d) 578] held that the replacement of the spools would amount to contributory infringement.

Judge Carpenter, in this district, in the case of Connecticut Telephone & Electric Co. v. Brown, 10 F.(2d) 823, denies that a breaker arm assembled as a removable unit might be legitimately replaced by other than the owner of the patent. The evidence there showed that the defendant supplied these complete breaker assembly units, which were complete component parts of the combination as replacement parts to fit Connecticut igniters. The court held that rebuilding of plaintiff's patented structure under the guise of repairing a worn-out part is not authorized under authoritative and numerous decisions, and that to allow such action would be to establish a dangerous precedent by permitting a defendant, by replacing parts and elements which do not wear out, thus to appropriate the substance of plaintiff's invention under the assertion of a right to replace a minor part or element thereof. The court rightfully there announced the doctrine that the user has the undoubted right to replace a worn-out element with a new element, and that in effecting such a repair the user may do so in any way he chooses, except that he must not replace other elements of the patented device which were not worn out. The law as announced by the Supreme Court in Leeds & Catlin v. Victor Co., by the Court of Appeals in Heyer Duplicator Co. v. Ditto, and by Judge Carpenter in the case last cited, seem to this court conclusive of the questions in this case.

It cannot be maintained that the user of a lubricating equipment may not repair broken parts. The plaintiff separately enumerates, illustrates, and describes every screw, spring, nut, disc, washer of every size that might be lost, broken, or worn out. The cup leather sealing disc of the coupler might legitimately be replaced. But defendants assert the right to make the complete component parts, the pin fitting, the coupler, the com-

pressor, and the hose and coupler combined. The authoritative decisions are against such contention. The complete component parts, made up of smaller parts, are essential elements of the entire combination. Each one is an integral combination in itself, and while defendant may supply as legitimate repairs certain elements of each component part, it may not supply the entire component part. These fittings, hose and coupler and compressor, are vastly different from the washer subject to being split, mentioned in Morgan-Gardner Electric Co. v. Buettner (C. C. A.) 203 F. 490, or the repairs authorized in Shickle v. St. Louis, 77 F. 739, 23 C. C. A. 433, and other cases cited.

They are much more similar to the locks and links of National Malleable Casting Co. v. American Steel Foundries (C. C.) 182 F. 626, where the court held that proper repair would extend only to replacement of the link. The court said there: "The parts supplied by the defendant are not strictly repairs. The defendant does not actually repair a defective part; it supplies new parts to railroad companies in advance of the actual needs thereof. * * * As a result, many new locks are put in operation, while the old ones which they replace are in perfect serviceable condition. Such a replacement is not a repair of the lock. * * * If it is necessary to facilitate the movement of cars that the railroads be permitted to so substitute locks with attached links, though only the link is defective, and for such purpose to keep on hand at different points a stock of such locks with attached links—and this would seem to be necessary—such locks should be obtained from the complainant." The component parts here attempted to be sold are even less a repair than the replacement of a new filament in a glass bulb condemned in Davis v. Edison, 60 F. 276, 8 C. C. A. 615; or the gathering up and piecing together of cotton bale ties originally sold by plaintiff and subsequently continued in their normal use, in Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 S. Ct. 52, 27 L. Ed. 79; or the replacement of parts in Brown v. Puget Sound Co. (C. C.) 110 F. 383. Defendants may repair but may not replace any of the component parts of the plaintiff's appliance, such as the pin fitting, the compressor, and the hose and coupler. To do so would be to allow it to do something which the Circuit Court of Appeals condemns in the case of Heyer Duplicator Co. v. Ditto in these words: "We answer the question, as we did before, in appellee's favor, and say the spool or roll is not perishable or temporary in character, but is a permanent part of the machine, and is especially designed and constructed to fit into patentee's combination.".

[11, 12] The Larkin Company, however, contends that its right to sell these parts as replacements and repairs has been adjudicated by Judge Hickenlooper in the Ohio case. It appears that, after the court had decided the case upon the merits upon pleadings which did not raise the question of the right to sell parts as repairs and replacements, and without anything in the record to raise any such question, Judge Hickenlooper made some remarks indicating his views as to what the defendant might do in selling repair and replacement parts. His statement at that time, at the best, as the court views it, was a mere declaratory judgment, which our authorities do not recognize. The court, in its informal discussion of the matter, there said that upon the proofs in the case the question was not presented to the court at that stage of the proceeding, but that the question had been raised in the O. K. Mfg. Co. Case, where the court had held that it was not an infringement to sell parts for repair and replacement, and that the Larkin Company would have a right to take advantage of that statement made in the other case between other parties. This court would recognize the full force of any adjudication by Judge Hickenlooper upon the question, but it is apparent from his own statement that the issue was not tried before him.

In 34 Corp. Jur. at page 873, it is said: "The force of the estoppel lies in the judgment itself; it is not the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon. *The reasoning of the court* in rendering a judgment forms no part of the judgment, as regards its conclusive effect, *nor are the parties bound by remarks made or opinions expressed by the court in deciding the cause,* which do not necessarily enter into the judgment." In Thompson v. Bushnell (C. C.) 80 F. 332, 333, the court said: "In order that said former judgment should operate as an estoppel, it is essential that there should be certainty to every intent. *Unless it appears from the record or consistent extrinsic evidence that the particular matter sought to be concluded was necessarily tried or determined, so that the judgment could not have been rendered without deciding it, there is no estoppel.*" See, also, Miller v. Belvy, 248 F. 83–86, 160 C. C. A. 223; Southern Pacific Railway Co. v. U. S., 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355.

It follows from what has been said that the plaintiff is entitled to the relief prayed, that the patents relied on are valid, that they are infringed, that the restriction relied upon by defendants is not sufficient to protect the plaintiff and is not lawful, that there can be no manufacture and sale of the component parts, such as pin fittings, compressors, hose, and couplers, constituting component parts of plaintiff's combination; that there can be manufacture and sale only of what are properly known as repair parts, such as screws, discs, and lips.

A decree accordingly may be prepared and an accounting as prayed ordered.